(92 South. 202)

## TENNESSEE RIVER NAV. CO. v. WALLS.
### (8 Div. 865.)

(Court of Appeals of Alabama. Nov. 15, 1921.)

**1. Shipping ⬳108—Breach of express contract by steamboat company to take up and transport goods gives cause of action.**

When a steamboat company through its duly authorized agents specifically contracted to take up, load, and transport certain railroad ties placed at a landing place, but failed within a reasonable time to do so, the contract was thereby broken, and it was liable for the damage proximately caused, unless the shipper with due notice negligently failed to minimize the damages, and a complaint alleging these facts stated a cause of action.

**2. Shipping ⬳108—Complaint not demurrable for failure to name agent making contract sued on.**

In an action against a steamboat company for breach of a special contract to transport goods, the complaint alleging the making of the contract by the company through its duly authorized agents was not subject to demurrer for failure to name the agent.

**3. Shipping ⬳101, 156—Steamboat company holding itself out as carrier held a common carrier.**

Under Code 1907, § 5520, as amended by Acts Sp. Sess. 1909, p. 31, a company operating a steamboat between certain points, and holding itself out as a common carrier of freight and passengers, was a common carrier.

**4. Shipping ⬳101—Duty of steamboat company to accept cross-ties tendered for transportation.**

Under Code 1907, § 5549, it was the duty of a common carrier by steamboat to receive cross-ties tendered for transportation at a regular landing place at proper hours and in good shipping condition, according to reasonable rules of the common law, no rules having been prescribed by the Public Service Commission.

**5. Shipping ⬳101—Steamboat carrier not required to increase equipment in order to transport.**

The obligation of a carrier by steamboat to receive and transport does not extend beyond its ability with the equipment and facilities at hand, and it is under no duty, in the absence of special contract, to increase its equipment in order to transport property.

**6. Shipping ⬳101—Steamboat must carry for all employing it in order in which application made.**

A carrier by steamboat, as well as a railroad, must carry indifferently for all who may employ it, and in the order in which application for carriage is made.

**7. Shipping ⬳101—Steamboat's duty as to freight tendered at landings between termini of route stated.**

A steamboat leaving its terminal with a full cargo is not required to overload by taking additional freight tendered at lower landings, but, upon finding such freight, with notice that it will remain there for transportation, it is its duty to take such freight in its turn, and not to so place itself with reference to subsequent consignments as to render itself unable within a reasonable time to accept and transport the freight tendered at such lower landings.

**8. Shipping ⬳104—Complaint held to state cause of action for breach of implied contract by steamboat carrier.**

A complaint alleging facts constituting a steamboat company a common carrier, a tender to it of cross-ties for shipment, notice to it and failure by it to accept and transport, and resulting damage, stated a cause of action for breach of an implied contract.

**9. Witnesses ⬳258—Cannot testify from books and memoranda without independent recollection.**

It was error to permit a witness to testify to the number of railroad ties at a steamboat landing where he obtained his figures from books and memoranda, and had no independent recollection.

**10. Trial ⬳253(10)—Instruction ignoring contract shown by evidence properly refused.**

Instructions that, if a steamboat captain only agreed to transport railroad ties, or to furnish barges therefor, when he could get barges, the verdict should be for the defendant, were properly refused as ignoring evidence of a contract made with the general manager of the steamboat company.

**11. Shipping ⬳108—No recovery on count alleging agreement to take up and transport when evidence showed shipper was to load.**

The affirmative charge requested by defendant should have been given as to a count alleging an agreement by a steamboat carrier to take up, load, and transport railroad ties where plaintiff himself testified that under the agreement he was to load the ties.

**12. Shipping ⬳108—Captain has ordinarily no power to make general contracts.**

As a general rule, the captain of a vessel is not the general agent of the owner, with power to make general contracts as to shipments.

**13. Trial ⬳248—Instructions seeking to limit agency held abstract where question was for jury.**

Where there was a question for the jury as to the scope of the agency of a steamboat captain, charges seeking to limit his agency were properly refused as abstract.

Appeal from Circuit Court, Marshall County; W. W. Harralson, Judge.

Action by Seaborn J. Walls against the Tennessee River Navigation Company, for damages for failure to transport certain cross-ties. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The following is the complaint:

Count 7. "Plaintiff claims of the defendant $1,500 damages for that * * * the defend-

---

ant was engaged in the transportation of freight on the Tennessee river, between Chattanooga and Decatur, Ala., and intermediate points on said river, and was operating steamboats and barges on said river for transportation of freight as a common carrier, and the plaintiff on or about the time mentioned placed at the customary and usual landing of said steamboats and barges operated by defendant on said river cross-ties or railroad ties, to the number of, to wit, 2,000, and notified defendant through its agents and servants, duly authorized by it in their behalf, that the said cross-ties were so placed at the customary and usual landing, and the defendant, through its agents and servants duly authorized by it in that behalf, thereupon agreed with plaintiff to take up and load upon said steamboat and barges the cross-ties so placed at said landing by plaintiff, and to transport the same to Gunter's Landing on the Tennessee river for an agreed compensation to be paid to defendant by plaintiff, and plaintiff avers that, at the time of making such agreement, defendant knew that plaintiff was making such agreement for transportation for the purpose of selling said ties to the Nashville, Chattanooga & St. Louis Railroad, at a profit over said cost of ties and transportation, and knew that plaintiff, relying on the transportation of said ties by the defendant, had entered into a contract for the sale of said ties to the Nashville, Chattanooga & St. Louis Railway Company, and that plaintiff had performed a part of said contract. And the plaintiff avers that defendant, with full knowledge of the existence of plaintiff's contract with said railroad company, negligently failed and refused to take up and transport or convey said cross-ties, but negligently permitted them to be washed away by floods to plaintiff's great loss and damage," etc.

Count 8. Same as 7, down to and including the words "at a profit over the cost of said ties and transportation," and concludes as follows: "And that defendant, having notice and full knowledge of plaintiff's purpose and intention to deliver and sell said ties to said railroad company, and to receive said profit in violation of its duty, its contract and agreement to take up and transport said ties, negligently failed and refused to do so, and negligently permitted said ties to be washed away by floods," etc.

Count 9. The same as count 8.

Count 10. This count alleges the facts to show that defendant was a common carrier in the transportation of freight on the Tennessee river between Chattanooga, Tenn., and Decatur, Ala., and the intermediate points on said river, that Gunter's Landing was one of those intermediate points and the regular landing or stopping place for the company's boats; that plaintiff placed 2,000 railroad ties at this point, and notified the defendant's agents, servants, and officers having authority to receive and act upon such notice of the placing of such cross-ties, and of his desire to have them taken up and transported, and thereafter defendant, through its agents and servants, failed and neglected to take up and transport said cross-ties, and they were washed away by floods, by reason of the neglect and failure of the defendant.

Count 11. Alleges the same state of facts, and that the cross-ties were placed at such landing at a proper time and in good shipping condition, of which the defendant had notice by timely and proper notice through its duly authorized agents, and after which notice the defendant failed and refused to take- up and transport said cross-ties, whereby the said cross-ties were permitted to and did wash away by floods in said river, and were lost to plaintiff by reason of the negligence and failure of the said defendant to properly take up and transport said ties.

Count 12 was practically the same as count 11.

The following charges were refused to the defendant:

"(2) If Whittaker only agreed to furnish barges, whenever he could get one to transport the plaintiff's ties, and if defendant did this, your verdict should be for the defendant."

"(4) If Capt. Whittaker did not agree absolutely and unconditionally to transport Wall's ties, but if he only agreed to do so whenever he could get a barge, then plaintiff has not proven his case as alleged and your verdict should be for the defendant."

Street & Bradford, of Guntersville, for appellant.

The complaint should have named the officers, or at least the official position of the agents. 94 Ala. 191, 10 South. 659; 114 Ala. 191, 21 South. 430; 100 Ala. 187, 14 South. 175; 175 Ala. 211, 57 South. 477; 148 Ala. 503, 41 South. 930; 7 Ala. App. 374, 62 South. 259; 4 Ala. 447; 12 Ala. 560; 27 Ala. 497, 83 Ala. 484, 3 South. 618. The owner of a vessel must accept goods up to the vessel's capacity, but he is under no obligation to provide other ships, because his vessel is inadequate. 24 R. C. L. 1300 et seq.; 4 R. C. L. 72; 131 Ga. 831, 63 S. E. 577, 20 L. R. A. (N. S.) 867, 127 Am. St. Rep. 265, 15 Ann. Cas. 1044. The court erred in permitting the witness to testify from memorandum. 1 Ala. 517; 11 Enc. of Evid. 123; 40 Cyc. 2463. Charges 2 and 4 should have been given. 204 Ala. 285, 85 South. 711. The defendant was entitled to the affirmative charge as to counts 7, 8, and 9. 155 Ala. 263, 46 South. 561. A captain is not a general agent of the company. 36 Cyc. 123.

John A. Lusk & Son, of Guntersville, for appellee.

It was not necessary to name the agent. 114 Ala. 191, 21 South. 430; 2 C. J. 904, 905. A common carrier is bound to receipt for carriage and to carry goods when tendered to it. Sections 5520, 5549, Code 1907; Gen. Acts 1909, p. 31; 10 C. J. 65. When a carrier knows goods are awaiting shipment, it is his duty to reserve space or provide other means of carrying. 8 Cyc. 413. The court properly refused the charges requested. 24 R. C. L. 1302; 4 R. C. L. 672; 10 C. J. 216; 27 Ala. 336; 175 Ala. 211, 57 South. 477. On these authorities the court cannot be put in error for refusing the charges requested.

SAMFORD, J. This is the second appeal in this case. Tenn. R. Nav. Co. v. Walls, 204 Ala. 285, 85 South. 711. On that appeal the Supreme Court held that the action was based on a special contract, and as such the complaint was subject to demurrer, in that there was no averment that the agents mentioned had any authority in the making of the contract alleged.

[1] Upon a return of the cause to the court below, the complaint was amended, and issue finally joined on counts 7, 8, 9, 10, 11, 12. Counts 7, 8, and 9 claimed damages by reason of the failure of defendant to transport certain cross-ties, which, through its duly authorized agents, it had specifically contracted to do. Of course if defendant, through its duly authorized agents, acting within the scope of their authority, entered into a contract with plaintiff to "take up and load" certain ties placed by plaintiff at the usual landing places of defendant's boat, and defendant failed within a reasonable time to so load and transport such ties according to the terms of the contract, the contract would thereby be breached, and the defendant would be liable to the plaintiff for the damage proximately caused by such breach, unless the plaintiff with due notice of the breach negligently failed to minimize the damage. The special contract declared upon in this respect is not materially different from contracts between individuals for the performance of an act or service. The complaint alleges a special contract of service, entered into on the part of defendant by "its agents and servants duly authorized by it in that behalf," a breach of the contract by the defendant, a damage to the plaintiff as a proximate result. This presents a good cause of action, and, as we understand it, is in line with the holdings of the Supreme Court on former appeals.

[2] Neither was the complaint subject to the ground of demurrer to the effect that the agent making the contract was not named. 2 Corpus Juris, pp. 904, 905.

Counts 10, 11, and 12 present a different contention, to wit, that, the defendant being a common carrier, and holding itself out as such, and having plaintiff's cross-ties presented to it at the usual places for carriage, and at reasonable times, it was the duty of defendant, under the law, to have received and transported plaintiff's cross-ties within a reasonable time, and, failing in this duty, and damage having resulted, the defendant is liable.

[3, 4] Defendant was operating a steamboat on the Tennessee river, between Chattanooga, Tenn., and Albany, Ala., and holding itself out to the people along the river as a carrier of freight and passengers. Under our statute (Code, 5520, as amended by Acts Leg. 1909 [Sp. Sess.] p. 31), defendant was a common carrier, and under section 5549 of the Code of 1907 it was the duty of defend-

ant to receive the plaintiff's cross-ties for transportation whenever tendered at a regular station at proper hours, and in good shipping condition, according to reasonable rules prescribed by law or the Railroad Commission. So far as has come to our attention the Public Service Commission (successors to the Railroad Commission) has not prescribed rules governing shipments of this kind, and therefore the reasonable rules of the common law must govern.

[5-7] Being a common carrier, defendant was bound to receive the plaintiff's cross-ties for transportation, and to carry them for a just compensation on the route navigated by its boats, is a rule too well settled to admit of controversy now. 1 Moore on Carriers, p. 118; 4 R. C. L. p. 658. But this rule also has its reasonable limitations. The obligation to receive and transport does not extend beyond the ability of the defendant to perform with the facilities and equipment at hand. If defendant's boat and barges could have received and transported plaintiff's cross-ties along with its other freight, and within a reasonable time, they having been tendered and at a suitable time and place, it was its duty to do so, and failing to perform this duty, and damage resulting, defendant would be liable. However, it was no part of the defendant's duty, in the absence of special contract, to increase its equipment in order to transport plaintiff's cross-ties. The obligation of the carrier is general, and embraces every one in the community alike, which it must serve without unjust discrimination (6 Cyc. 372; 1 Moore on Carriers, p. 116); but, in case of a steamboat company, this obligation does not extend beyond the present ability of the company's equipment. There is a marked and well-defined difference between a steamboat company operating boats on a river open to the free navigation of all crafts desiring to engage in serving the public and a railroad company granted certain powers under its charter, and serving exclusively a certain territory. In the one case the railroad must furnish sufficient facilities for the reasonably prompt transportation of goods tendered for carriage, while a steamship is only required to accept shipments tendered up to its ability to transport. 4 R. C. L. p. 672. But the law requires both ship and railroad to carry indifferently, for all who may employ them, and in the order in which the application is made. 6 Cyc. 372, B.

So in the present case the defendant, operating a steamboat on the Tennessee river, would not be required to increase its facilities for handling freight tendered to it; but it would be required to accept for shipment such freight as was tendered, and in the order of its tender, to the capacity of its present facilities. Therefore, if defendant's boat leaves Chattanooga on its down trips with a full cargo, it would not be required

to overload its vessel by taking on additional freight tendered at lower landings on that trip, but, upon finding at such lower landings freight tendered for transportation, with notice that it would remain there for defendant to transport, it was defendant's duty to take such freight in its turn, and not to so place itself with reference to subsequent consignments as to render itself unable, within a reasonable time, to accept and transport the freight thus tendered at such lower landings. Such was its duty, a breach of which, coupled with damage, rendered the defendant liable, either for a breach of implied contract, or in tort, as the case may be.

[8] The complaint, after alleging facts constituting defendant a common carrier, alleges plaintiff as consignor, the tender of the cross-ties for shipment, notice to defendant, failure of defendant to accept and transport, and resulting damage. This was a declaration upon a breach of the implied contract, and was not subject to any of the grounds of demurrer interposed. Any special defenses were available to defendant by plea, and not by demurrer.

[9] The plaintiff, while being examined as a witness, was allowed to testify, over the objection and exception of defendant that there were about 700 ties at Cross' Landing; "that he got these figures from referring to books and memoranda." It was not shown that witness had any independent recollection of the number of ties, and hence this testimony was illegal, and the objection should have been sustained. Holmes v. Gayle, 1 Ala. 517; 12 Michie's Dig. 1208, § 180 (10).

All of the conversation had between plaintiff and the captain of the vessel with regard to the contract of shipment was admissible as part of the res gestæ.

The other assignments of error, based upon the admissibility of testimony, are without merit.

[10] Charges 2 and 4 were doubtless good, on the first trial of this case, on the facts there presented, but on the present appeal, and on the facts appearing in this record, the charges ignore entirely the contract made between Capt. Wilky, the general manager of the company, and plaintiff. Capt. Whittaker was only the captain of the vessel, and only authorized to contract with reference to his ship, while the testimony here tends to show a special contract with the corporation itself.

[11] As a part of the declaration in count 7, plaintiff alleges:

"Thereupon (defendant) agreed with plaintiff to take up and load upon said steamboat and barges the cross-ties so placed at said landings by plaintiff."

The evidence on this particular allegation was given by plaintiff himself, who said, "I was to load the ties on the barge," and, "There was an agreement between me and Whittaker that the barge was to be placed at the landing and that I was to load the ties on the barge." This testimony was without conflict and precluded plaintiff from a recovery as to count 7. The affirmative charge as requested by defendant as to this count should have been given. N., C. & St. L. Ry. v. Woods, 155 Ala. 263, 46 South. 561.

For like reasons the general charges should have been given as requested by defendant as to counts 8 and 9.

[12, 13] As a general rule, the captain of a vessel is not the general agent of the owner with power to make general contracts as to shipments, but, under the facts in this case, it was a question for the jury as to what was the scope of the agency of Capt. Whittaker. Therefore those charges seeking to limit the agency of Capt. Whittaker were abstract.

For the errors pointed out, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

---

⬿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes